United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAMES B. PORTER, PH.D.,

      Plaintiff,

    v.

TOM BATES, *et al.*,

      Defendants.

_____/

No. C-12-3523 EMC

**ORDER GRANTING PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*; AND GRANTING DEFENDANTS' MOTIONS TO DISMISS WITH PREJUDICE**

**(Docket Nos. 2, 8, 10)**

## I.   INTRODUCTION

Plaintiff James Porter filed a *pro se* complaint against Defendants Tom Bates, Berkeley City Council, Berkeley Police (collectively, the "Berkeley Defendants"), the University of California ("UC") Regents, UC Police Department, and W. Kasiske (collectively, the "UC Defendants"). Compl., Docket No. 1. Plaintiff also filed an application to proceed *in forma pauperis* ("IFP"). Docket No. 2. Defendants have filed motions to dismiss. Docket Nos. 8, 10. Plaintiff has filed no opposition, nor did he appear at the hearing. For the reasons set forth below, the Court **GRANTS** Plaintiff's application to proceed IFP and **GRANTS** Defendants' motions to dismiss with prejudice.

## II.   FACTUAL & PROCEDURAL BACKGROUND

Although Plaintiff's complaint is difficult to understand and contains few facts, it appears that Plaintiff alleges as follows. On June 19, 2012, while Plaintiff was sitting outside near 2362 Telegraph Avenue in Berkeley, a UC Berkeley employee, Defendant Kasiske, informed Plaintiff that he was violating Berkeley Municipal Code ("BMC") § 12.70.030(u), and issued him a citation from the UC Berkeley Police Department. Compl. at 2 & Ex. 1. BMC § 12.70.030(u) bans smoking

"within 50 feet of any entrance, exit, operational window, or air intake vent to any building that is used as a healthcare facility, licensed child or adult care facility, or senior center, or within 25 feet of any entrance, exit, operational window, or air intake vent to any other building that is open to the public." Defendant's Request for Judicial Notice, Docket No. 9, Ex. A.[1]  Plaintiff alleges this citation violated his First Amendment rights and that the ordinance "banned specific expressions of Indigenous Faith, Culture and Ancient Social Custom from designated Capitalist Preserves . . . ." Compl. at 2.  Plaintiff received a second citation from the Berkeley Police Department on July 2, 2012. *Id.*  Although the second citation is difficult to read, it appears to be for a violation of the same ordinance. *See* Compl. Ex. 2.[2]  On July 6, 2012, Plaintiff filed suit against Defendants, alleging causes of action for "Violation of Civil Rights Under Color of Authority" and "Conspiracy to Violate Civil Rights Under Color of Authority."  Docket No. 1. He seeks, *inter alia*, injunctive relief "suspending enforcement of" the ordinance.  Compl. at 3.

### III.   DISCUSSION

A.     *In Forma Pauperis* Application

When presented with an application to proceed *in forma pauperis*, a court must first determine if the applicant satisfies the economic eligibility requirement of 28 U.S.C. § 1915(a).  *See Franklin v. Murphy*, 745 F.2d 1221, 1226 n.5 (9th Cir. 1984).  Section 1915(a) does not require an applicant to demonstrate absolute destitution.  *See McCone v. Holiday Inn Convention Ctr.*, 797 F.2d 853, 854 (10th Cir. 1982) (citing *Adkins v. E.I. Du Pont de Nemours & Co., Inc.*, 335 U.S. 331, 339 (1948)).

In his financial affidavit, Mr. Porter states that he is not currently employed and has no current income.  His last paycheck was in February 2012 for one month.  He does not own a home or vehicle, has no other assets, and his present bank account balance is $580.54.  Given these circumstances, the Court **GRANTS** Mr. Porter's application to proceed IFP.

---

[1]  Defendant's Request for Judicial Notice is **GRANTED**.  Fed. R. Evid. 201(b).

[2]  The Berkeley Defendants' motion to dismiss suggests that the second citation was for a violation of BMC § 12.70.030(w), which prohibits smoking on "commercial area sidewalks."  Mot., Docket No. 8, at 2.

**United States District Court**

For the Northern District of California

Title 28 U.S.C. § 1915(e)(2) requires the Court to dismiss any case in which a litigant seeks leave to proceed IFP if the Court determines that the action is (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2). To make this evaluation, the Court looks to Mr. Porter's complaint. Because this inquiry dovetails with Defendants' motions to dismiss, the Court will consider them together below.

B.    Motion to Dismiss

    1.    Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint or counterclaim, facilitating dismissal to the extent the pleading fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). The pleading is construed in the light most favorable to the non-moving party and all material allegations in it are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir.1986).

However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (internal brackets and quotation marks omitted)). Hence, the Court need not assume unstated facts, nor will it draw unwarranted inferences. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) ("Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

1    Under *Twombly*, a plaintiff (or counterclaimant) must not merely allege conduct that is

2  conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its

3  face." 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that

4  allows the court to draw the reasonable inference that the defendant is liable for the misconduct

5  alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is

6  not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant

7  has acted unlawfully. . . .  When a complaint pleads facts that are merely consistent with a

8  defendant's liability, it stops short of the line between possibility and plausibility of entitlement to

9  relief." *Id.* (quoting *Twombly*, 550 U.S. at 556-57) (internal quotation marks omitted).  In sum, if the

10  facts alleged foster a reasonable inference of liability – stronger than a mere possibility – the claim

11  survives; if they do not, the claim must be dismissed. *See Iqbal*, 129 S. Ct. at 1949-50.

12    Ordinarily, a *pro se* complaint will be liberally construed and held to less stringent standards

13  than formal pleadings drafted by lawyers.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  The *pro*

14  *se* complaint will be dismissed only if it appears "beyond a reasonable doubt that the plaintiff can

15  prove no set of facts in support of his claim which would entitle him to relief."  *Pena*, 976 F.2d at

16  471 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  As the Ninth Circuit has recently

17  clarified, courts "continue to construe pro se filings liberally when evaluating them under *Iqbal*.

18  While the standard is higher, our 'obligation' remains, 'where the petitioner is pro se, particularly in

19  civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any

20  doubt.'"  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (quoting *Bretz v. Kelman*, 773 F.2d

21  1026, 1027 n.1 (9th Cir. 1985) (en banc)).  However, the Court may not "supply essential elements

22  of the claim that were not initially pled."  *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d

23  266, 268 (9th Cir. 1982); *see also Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) (per curiam)

24  ("Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of

25  procedure.").

26  ///

27  ///

28  ///

**United States District Court**
For the Northern District of California

2.     Sufficiency of Plaintiff's Allegations

In the instant case, Plaintiff's complaint suffers from fatal flaws.

First, with respect to the UC Defendants, Plaintiff's claims are largely barred by the Eleventh Amendment. The Eleventh Amendment provides as follows: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign state." U.S. Const. amend XI.  As interpreted, the Eleventh Amendment bars suits in federal court against a state government by that state's citizens, by citizens of another state, or by citizens of a foreign state. *See Montana v. Goldin*, 394 F.3d 1189, 1195 (9th Cir.2005) (noting that, absent waiver, states and state agencies are immune under the Eleventh Amendment from private actions for damages or injunctive relief in federal court).  Eleventh Amendment immunity extends to agencies of the state government and "arms of the state." *See Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429–30 (1997) (discussing whether a state instrumentality is "an arm of the State" for Eleventh Amendment immunity purposes); *Goldin*, 394 F.3d at 1195 (stating that, under the Eleventh Amendment, "'agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court'").

This immunity also applies to the University of California and the Regents, as well as (with some exceptions) their employees in their official capacities.  *Doe*, 519 U.S. at 429; *Armstrong v. Meyers*, 964 F.2d 948, 949-50 (9th Cir. 1992); *see also Chang v. Rockridge Manor Condo.*, C-07-4005 EMC, 2008 WL 413741, at *16 (N.D. Cal. Feb. 13, 2008), *aff'd*, 344 F. App'x 365 (9th Cir. 2009) ("Eleventh Amendment immunity protects both the University and the University employees in their official capacities.").  Accordingly, Plaintiff's claims, to the extent they can be discerned, are barred as against the UC Defendants with the exception of claims against Defendant Kasiske in his personal capacity, or claims for prospective relief against Defendant Kasiske in his official capacity.  *See Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003) ("Under the doctrine of *Ex parte Young*, suits against an official for prospective relief are generally cognizable, whereas claims for retrospective relief (such as damages) are not."); *see also Romano v. Bible*, 169 F.3d 1182, 1186 (9th Cir. 1999) ("We . . . have presumed that officials necessarily are sued in their personal

5

**United States District Court**
For the Northern District of California

1  capacities where those officials are named in a complaint, even if the complaint does not explicitly

2  mention the capacity in which they are sued.").

3        Second, regardless of immunity, Plaintiff fails to state a plausible claim for relief. Plaintiff's

4  complaint contains almost no facts; for example, he fails to explain the circumstances surrounding

5  his receipt of each citation, or how Defendants violated his civil rights in issuing said citations. He

6  similarly fails to allege what conduct constituted First Amendment protected speech or exercise of

7  religion; *e.g.*, what is his "indigenous faith" and how does his conduct (presumably, smoking)

8  further said faith. He alleges no speech or expressive conduct prohibited by Defendants. To the

9  extent he seeks to allege some kind of conspiracy claim, he fails to allege any basis for such a claim

10  on even the most conclusory terms.

11        Even granting Plaintiff the most liberal reading possible of his allegations, it is clear that he

12  fails to state a claim. To the extent he seeks to raise claims under 42 U.S.C. § 1983 for violations of

13  his First Amendment right to the free exercise of religion, the rational basis test would apply to any

14  examination of BMC § 12.70.030. *Miller v. Reed*, 176 F.3d 1202, 1206 (9th Cir. 1999) ("In

15  *Employment Division v. Smith*, 494 U.S. 872 (1990), the Court analyzed a free exercise of religion

16  claim under a rational basis test."). "Under this test, a rationally based, neutral law of general

17  applicability does not violate the right to free exercise of religion even though the law incidentally

18  burdens a particular religious belief or practice." *Id.* (citing *Smith*, 494 U.S. at 879). As *Miller*

19  summarized,

20          In *Smith*, the Supreme Court held: "[T]he right of free exercise does
        not relieve an individual of the obligation to comply with a valid and

21          neutral law of general applicability on the ground that the law
        proscribes (or prescribes) conduct that his religion prescribes (or

22          proscribes)." 494 U.S. at 879 (internal quotations and citations
        omitted). The Court explained: "The government's ability to enforce

23          generally applicable prohibitions of socially harmful conduct, like its
        ability to carry out other aspects of public policy, 'cannot depend on

24          measuring the effects of a governmental action on a religious
        objector's spiritual development.'" *Id.* at 885 (quoting *Lyng v.*

25          *Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 451
        (1988).

26

27  *Miller*, 176 F.3d at 1206.

28

1    Plaintiff's allegations cannot satisfy this standard.  First, there can be no dispute that BMC §

2    12.70.030 is a neutral law of general applicability, as it bans smoking generally in various

3    enumerated public places.  Nor can one dispute that the law is rationally based.  As the legislative

4    findings indicate, the Berkeley City Council found, *e.g.*, that "tobacco smoke is a major contributor

5    to indoor air pollution, and that breathing secondhand smoke is a cause of disease, including lung

6    cancer, in nonsmokers."  BMC § 12.70.010.  With those findings in mind, the Council enacted the

7    ordinance in order to "protect the public health and welfare" and "guarantee the right of nonsmokers

8    to breathe smoke-free air," among other goals.  *Id.*  A ban on smoking in certain public spaces is

9    obviously related to those legitimate interests.  *See, e.g.*, *Gallagher v. City of Clayton*, 4:11-CV-392

10   CAS, 2011 WL 6140905, at *4 (E.D. Mo. Dec. 9, 2011) ("[P]laintiff cannot plausibly meet his

11   burden of establishing there is no rational or conceivable basis to support the smoking ban.").  Thus,

12   regardless of Plaintiff's religious belief that is allegedly furthered by smoking, he cannot

13   demonstrate that the Berkeley ordinance is an unconstitutional burden on the exercise of those

14   beliefs.

15   Nor can Plaintiff allege the deprivation of any other First Amendment rights by the

16   ordinance.  *See, e.g.*, *NYC C.L.A.S.H., Inc. v. City of New York*, 315 F. Supp. 2d 461, 475-76

17   (S.D.N.Y. 2004) ("[T]he Court finds that the Smoking Bans present no material impediment to a

18   smoker's ability to freely associate and assemble under the First Amendment."); *id.* at 481 ("[T]he

19   Court is not persuaded that the act of smoking in a bar or restaurant, as proscribed by the Smoking

20   Bans, is sufficiently expressive conduct that would merit protection under the First Amendment.").

21   Similarly, Plaintiff cannot plausibly allege any fundamental right to smoking so as to support a

22   claim for the deprivation of said right.  *See, e.g.*, *Roark & Hardee L.P. v. City of Austin*, 394 F.

23   Supp. 2d 911, 918 (W.D. Tex. 2005) ("Of course it is clear that there is no constitutional right to

24   smoke in a public place.") (citing *Rohde v. City of Austin*, 124 Fed. Appx. 246 (5th Cir.2005)

25   (smoker failed to state a First Amendment association claim)); *Gallagher*, 2011 WL 6140905 at *2

26   ("The Court agrees with the Eighth Circuit and lower federal courts that smoking does not give rise

27   to a fundamental right protected by the United States Constitution.").  Thus, the Court can discern no

28

1  avenue for Plaintiff to amend his complaint so as to plausibly state a claim against the enforcement

2  of the Berkeley ordinance.

3  **IV.  CONCLUSION**

4  For the foregoing reasons, the Court **GRANTS** Plaintiff's application to proceed *in forma*

5  *pauperis*, **GRANTS** Defendants' motion to dismiss, and **DISMISSES** Plaintiff's complaint as

6  against all Defendants.  Although this is Plaintiff's first complaint, dismissal with prejudice is

7  warranted because Plaintiff cannot allege any cognizable claims.  *See AE ex rel. Hernandez v.*

8  *County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012) (district court may deny leave to amend when it

9  would be futile).  In addition, because the Court's findings above conclusively resolve Plaintiff's

10  claims, the Court need not address the UC Defendants' remaining arguments.  The Clerk shall enter

11  judgment and close the file.

12  This Order disposes of Docket Nos. 2, 8, and 10.

13

14  IT IS SO ORDERED.

15

16  Dated:  September 11, 2012

17  _____
    EDWARD M. CHEN

18  United States District Judge

19

20

21

22

23

24

25

26

27

28